## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | |
|---|---|
| CHARLES RODGER BERRY[1] ,      ) | |
| **Plaintiff,**      ) | |
|      ) | |
| **vs.**      ) | **Case No. 2:10-CV-162** |
|      ) | |
| **JUDGE THOMAS J. SEELEY, JR.;**      ) | |
| **KAREN GUINN, CIRCUIT COURT CLERK;**      ) | |
| **RONALD W. JENKINS, ATTORNEY;**      ) | |
| **JAMES R. MILLER, II, ATTORNEY; and**      ) | |
| **MOUNTAIN STATES HEALTH ALLIANCE,**      ) | |
| **Defendants.**      ) | |

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights case which seeks both injunctive relief and monetary damages, [Docs. 1, 15, 20]. Each of the defendants has filed a motion to dismiss, [Docs. 6, 7, 13, 26], and/or for summary judgment, [Doc. 40]. The plaintiff has responded to each of the pending motions, [Docs. 15, 24, 30, 43, 47], and the motions are now ripe for disposition. Also pending is an appeal by the plaintiff from the Magistrate Judge's order dated October 20, 2010, [Doc. 49]. For the reasons which follow, each of the motions to dismiss will be GRANTED and plaintiff's complaint and amended complaint will be DISMISSED WITH PREJUDICE. As a result of the dismissal of plaintiff's claims, plaintiff's appeal of the Magistrate Judge's order will be DENIED AS MOOT.

## I.      Plaintiff's Allegations

The plaintiff has filed a rambling, somewhat incoherent, 14 page complaint, [Doc. 1], a pleading

---

[1]      The plaintiff referred to himself in the caption of his complaint as Sir: Charles-Rodger: Berry, Sovereign Citizen. He describes himself as a citizen at large, a citizen of the United States and then a citizen of a state, but apparently only for the purpose of electing federal representatives. He claims that a citizen "is sovereign over the State," and denies that a state "hold[s] sovereignty over its citizens."

entitled "Motion Defendants Violated Plaintiff's Civil Rights," [Doc. 2], and a 6 page amended complaint, [Doc. 20]. These *pro se* pleadings allege various violations of the constitutional rights of the plaintiff, including his rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments[2] and "the Privacy Act."[3] The plaintiff names the following defendants: (1) Tennessee Circuit Court Judge Thomas J. Seeley, Jr. ("Judge Seeley"); (2) Washington County, Tennessee Circuit Court Clerk Karen Guinn ("Guinn"); (3) Ronald W. Jenkins ("Jenkins"), a private attorney; (4) James R. Miller, II ("Miller"), a private attorney; and (5) Mountain States Health Alliance ("Mountain States"), which apparently operates Johnson City Medical Center.[4]

So far as the Court can tell, the following are the factual allegations made by the plaintiff: The plaintiff is a plaintiff in a personal injury case filed in the Circuit Court in Washington County, Tennessee. The defendant(s) in the state court action is represented by defendant attorneys Jenkins and Miller. Judge Seeley is the presiding judge. During discovery, certain of plaintiff's medical records have

---

[2] Plaintiff characterizes the First Amendment right as "the right to not having to divulge Protected personal, private information." He characterizes the Fourth Amendment right as his right to be free from "unreasonable searches and seizures." He asserts a right under the Ninth Amendment to "those rights that belong to the people that have not been written." Plaintiff claims that his Fifth Amendment right to due process has been violated "by the judge for not allowing this case to move forward by blocking the forward motion until the plaintiff forks over his social security number." He characterizes his Fourteenth Amendment right as one protecting a citizen "from unreason[sic] interference from the government."

[3] Plaintiff asserts that "[t]he Privacy Act . . . assures the citizen to privacy in the person, property and home from government interference."

[4] In various pleadings, plaintiff also lists other individuals as defendants in the caption of those pleadings, including this Court. He lists R. David Benner, Thomas L. Kilday, John C. Rambo, Robert E. Cooper, Jr. and Stephanie Bergmeyer. Mr. Benner is the attorney of record for defendant Jenkins; Mr. Kilday is the attorney of record for defendant Miller; Mr. Rambo is attorney of record for defendant Guinn; Mr. Cooper is the Attorney General and Reporter for the State of Tennessee who represents Judge Seeley; and Ms. Bergmeyer is an Assistant Attorney General who also represents Judge Seeley. Although listed in the caption of pleadings, the Court has not considered any of them to be defendants and no allegations are made against them.

been sought by the defendant attorneys. A hearing on the discovery request was conducted by Judge Seeley on June 6, 2010, and Judge Seeley granted the request and signed an order requiring the plaintiff to provide his Social Security number, presumably to allow the medical providers to correctly identify his records. The plaintiff has refused to provide his Social Security number and claims that both the release of unlimited medical history and records and his Social Security number are irrelevant in his state court action and a violation of his privacy rights. He claims that Jenkins, while representing the defendant(s), had *ex parte* communications with the court clerk and the judge. In his amended complaint, plaintiff alleges that Mountain States improperly released his medical records in response to Judge Seeley's order.

Plaintiff seeks thirty million ($30,000,000) dollars in damages because, he alleges, Judge Seeley "has failed to protect the plaintiff's Constitutional Right." He further claims that Judge Seeley has a conflict of interest in the case because he is personally represented by the law firm which employs Jenkins. Plaintiff seeks fifteen million ($15,000,000) dollars in damages from Guinn "for ex parte communication" with defendants Jenkins and/or Miller.[5] Plaintiff seeks twenty five million ($25,000,000) dollars in damages from Jenkins "for being one of the acting party [sic] in the ex parte communication and refusing to inform the plaintiff that he had a communication with the other defendants without the plaintiff being present or being informed." He also claims that Jenkins is unconstitutionally demanding plaintiff's Social Security number "so he may go on a wild goose chase" through discovery in the state civil action.[6] Plaintiff also seeks twenty five million ($25,000,000) dollars

---

[5]     Plaintiff also alleges, without factual support, that Judge Seeley knew of the *ex parte* communications and did nothing to prevent them.

[6]     Plaintiff also makes the conclusory claim that Jenkins had *ex parte* communications with Judge Seeley but makes no factual allegations to support his conclusions. His basis for the claim appears to be that

from Miller because he "had full knowledge of the ex parte communication," failed to inform plaintiff of the ex parte communication, and wrongfully demanded that the plaintiff "fork over his social security number." Plaintiff seeks one million ($1,000,000) dollars in damages from Mountain States for "negligence in distributing the plaintiff [sic] personal/Private information/property (to Jenkins and Miller) without the plaintiff's consent." More specifically, he alleges that Mountain States released certain of his medical records which were not within the time period covered by the order and wrongfully released his social security number to "defendant" (presumably as part of his medical records). Plaintiff also appears to assert a civil conspiracy by the defendants to violate his civil rights by acting "collectively and in concert."

Plaintiff also seeks injunctive relief and requests that the Court order Judge Seeley to "step down" from presiding over the state court case, direct that "all the medical institutions involved in this case remove the plaintiff's social security number from all files, electronic storage and records" that are released during discovery in the state court case, order that the records obtained not be used either in the state court case or the instant case, quash Judge Seeley's order requiring production of medical records, and order that Jenkins and Miller "cease and desist" from seeking plaintiff's social security number.

## II.    Applicable Legal Standard

The court may dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint–not to decide the merits of the case. It is well established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. Instead, Rule

the order for release of medical records originally began with calendar year 2001 but when signed began with calendar year 2000, apparently as a result of presumed *ex parte* communications between Judge Seeley and Jenkins.

8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 1950, (2009). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id*. The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570. The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Examining whether a complaint states a plausible claim for relief is a "context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well–pleaded allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *see also Iqbal*, 129 S. Ct. at 1950 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129

S. Ct. at 1950.

Moreover, a *pro se* pleading must be liberally construed and be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard is liberal, it does require more than the bare assertions of legal conclusion. *Lillard v. Shelby Co. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

## III.     Pending Motions

### A.     Judge Seeley

Judge Seeley moves to dismiss the complaint pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure for the following reasons: (1) the Eleventh Amendment bars the claim for monetary damages against Judge Seeley in his official capacity; (2) the Civil Rights Act of 1871 does not create a cause of action against Judge Seeley in his official capacity; (3) the doctrine of judicial immunity bars any claim against Judge Seeley in his individual capacity; and (4) the doctrine of abstention prohibits federal court intervention in plaintiff's on-going state court proceedings, [Doc. 7].

The plaintiff has responded to this motion with a rambling and largely incoherent 36 page pleading which contains a hodgepodge of nonsensical argument, quotations from the United States Constitution, Supreme Court cases, articles and commentary. Although, as noted above, plaintiff's

response is largely nonsensical, it appears that the plaintiff argues that the Eleventh Amendment has been incorrectly interpreted by the courts, that judicial immunity is not absolute and does not bar actions against state court judges for "criminal act[s],"[7] that the Civil Rights Act does create a right of action against Judge Seeley in this case because Judge Seeley has wrongfully required plaintiff to give up his personal/private property without his consent and in violation of his due process rights, and the doctrine of abstention "is invalid in this case" because the issue in state court concerns "the collapse of the defendants' floor" and the issue before this Court has to do with the violation of plaintiff's constitutional rights.

### 1.    Judicial Immunity

Judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless the judge's actions are taken in the complete absence of any jurisdiction. *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam); *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). This immunity extends to any civil suit for money damages, including claims under 42 U.S.C. § 1983. *King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985); *see also Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Thus, Judge Seeley is immune from liability unless he acted in the "clear absence of all jurisdiction," *Stump*, 435 U.S. at 357 (citing *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 351 (1871)), or his actions were "non-judicial acts." *Stump*, 435 U.S. at 361.

For the first exception to judicial immunity to apply, the judge must act without jurisdiction. *Brookings v. Clunk*, 389 F.3d 614, 623 (6th Cir. 2004). "[T]he scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S.

---

[7]    Plaintiff also makes the outlandish claim that Judge Seeley, by his judicial actions, committed treason.

at 356. To lose the protection of judicial immunity, a judge must act not merely in "excess of [his] jurisdiction," but in the "clear absence of all jurisdiction." *Bradley*, 80 U.S. at 351. The Supreme Court, in *Stump*, discussed the test as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant on a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 (citing *Bradley*, 80 U.S. at 352).

The jurisdiction exception concerns the full scope of a judge's statutory authority. *See Johnson v. Turner*, 125 F.3d 324, 325 (6th Cir. 1997). This includes any authority vested in the judge by statute, as well as any statutory abrogation of judicial authority. *Stump* 435 U.S. at 358; *Mills v. Killebrew*, 765 F.2d 69, 71 (6th Cir. 1985) ("A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction.").

The second exception to judicial immunity occurs when a judge's behavior does not constitute a judicial act. The Supreme Court has adopted a two-prong test for determining whether a behavior constitutes a judicial act. *Stump*, 435 U.S. at 362; *see also DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999). First, a court should look to "the nature of the act itself," and especially whether the action is a function that is normally performed by a judge. *Stump*, 435 U.S. at 362. Second, a court should look to "the expectations of the parties," including whether or not they were dealing with the judge in his judicial capacity. *Id.* The first prong of the *Stump* test is met where a judge is exercising a judicial power, as opposed to other administrative or legislative functions of the judge's office. *Forrester v. White*, 484 U.S. 219, 229 (1988); *Supreme Court of Virginia v. Consumers Union of the*

*United States, Inc.*, 446 U.S. 719 (1980).

Here, no reasonable argument is made that the actions complained of by Judge Seeley were not judicial acts normally performed by a judge in his judicial capacity. Judge Seeley was presiding over a case clearly within the jurisdiction of his court performing judicial functions related to that case. As counsel for Judge Seeley argues, deciding discovery issues and signing orders related to discovery disputes are at the core of a judge's judicial functions. Furthermore, although the plaintiff argues otherwise, Judge Seeley was clearly acting within the scope of his judicial authority in a matter within his jurisdiction. At best, the plaintiff makes an argument that Judge Seeley was in error in the entry of the order requiring production of his medical records.

Even if the Court accepts for the purpose of deciding this motion that Judge Seeley's actions were in error, he did not act in the clear absence of jurisdiction because he had the power to decide the discovery issue at hand and to enter the disputed order. *See Mireles* 502 U.S. at 12-13 ("If judicial immunity means anything, it means that a judge 'shall not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'") (quoting *Stump*, 435 U.S. at 356)). The exercise of an authorized judicial power, even if done in error, is precisely what the doctrine of judicial immunity was designed to protect. *See Stump*, 435 U.S. at 349 ("A judge is absolutely immune from liability . . . even if his exercise of authority is flawed by the commission of grave procedural errors."). Judge Seeley is clearly entitled to judicial immunity on any claim made by the plaintiff against Judge Seeley in his individual capacity.

## 2. The Eleventh Amendment

A suit against a state official in his official capacity is considered to be a suit against the state. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Wells v. Brown*, 891 F.2d 591 (6th

Cir. 1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will*, 491 U.S. at 65.

While the Eleventh Amendment does not bar monetary claims against state employees in their personal capacity, *Hafer v. Melo*, 502 U.S. 21, 27 (1991), the Eleventh Amendment does bar state employees from being sued in their official capacity for monetary relief. *Id.* at 25. More precisely, the Supreme Court has held that state employees sued in their official capacity for monetary relief are not "persons" within the meaning of § 1983. *Id.* Any suit by a private party "seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

There is no doubt in this case that Judge Seeley is a state employee. *See* Tenn. Const. art. VI, § 4; Tenn. Code Ann. § 8-42-101(3)(A); Tenn. Code Ann. § 16-10-201; Tenn. Code Ann. § 17-1-106. To the extent, therefore, that plaintiff seeks monetary damages from Judge Seeley in his official capacity, he seeks damages from the State of Tennessee and the action is barred by the Eleventh Amendment unless one of the recognized exceptions to Eleventh Amendment immunity exists. The two exceptions to Eleventh Amendment immunity from suits for monetary damages against states are: (1) where Congress expressly abrogates the Eleventh Amendment in legislation, *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 101 (1989); and (2) where a state expressly waives immunity from suit for money damages in federal court. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984). Congress has not abrogated the Eleventh Amendment for claims arising under 42 U.S.C. § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and Tennessee has not waived its sovereign immunity

with respect to suits under § 1983.  *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).  The Eleventh

Amendment therefore bars any action against Judge Seeley in his official capacity.[8]

### 3.      Abstention

As set forth above, plaintiff's claim for monetary damages against Judge Seeley in both

his individual and official capacity are barred.  A state official sued in his or her official capacity, when

sued for prospective or injunctive relief, however, is a person under § 1983 because official capacity

actions for prospective relief are not treated as actions against the state.  *Will*, 491 U.S. at 71 n.10.  The

state argues, however, that the doctrine of abstention announced in *Younger v. Harris*, 401 U.S. 37

(1971), prohibits this Court from interfering with the pending state judicial proceedings.  *Id.* at 43-44.

The federal courts properly invoke *Younger* abstention when a proceeding satisfies three criteria: "(1)

The underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate

important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the

course of the underlying proceeding."  *Danner v. Bd. of Prof'l. Resp.*, 327 F. App'x 577, 578 (6th Cir.

2009).

Here, the first of the criteria is easily met in that it is undisputed that the plaintiff seeks

federal court intervention in on-going state civil proceedings.  It is also quite clear that the underlying

proceedings implicate important state interests involving state negligence and landlord-tenant law and

the application of and enforcement of state discovery rules.  At the heart of *Younger* abstention is the

notion of comity, that is, "a proper respect for state functions, a recognition of the fact that the entire

---

[8]    Plaintiff appears to acknowledge, in his response to Judge Seeley's motion to dismiss, that the
Eleventh Amendment immunizes states from suits for money damages without their consent, but argues that
the Seventh Amendment clarifies that the immunity is overridden when constitutional rights of a "citizen"
have been violated.  He argues that a judge loses immunity when constitutional rights are violated.  He offers
no legal support and cites no authority for either of these frivolous arguments.

country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. The first and second elements for *Younger* abstention are satisfied if a state court proceeding was pending when the plaintiff filed his federal complaint. *See Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986).

The third criterion is also easily met in this case. Although plaintiff disagrees with the decisions made by the state court here, he clearly has an adequate opportunity in the state proceedings to raise any constitutional challenge he might have. *Cooper v. Parrish*, 203 F.3d 937, 954-55 (6th Cir. 2000) (citing *Tennessee v. Draper*, 800 S.W.2d 489, 497 (Tenn. Crim. App. 1990) ("Our courts have held that constitutional issues may be raised and considered at any stage of the proceedings.")). The Court will assume, but does not decide, that plaintiff can articulate an allegation of a violation of his constitutional rights here. Even so, there is nothing which prevents plaintiff from raising these issues in the state courts. He asks this Court to order the attorneys for the defendant in his state court civil proceedings "to cease and desist on demanding the plaintiff [sic] social security number and to except [sic] his medical reference number in lieu thereof." Plaintiff also seeks an order of this Court quashing Judge Seeley's discovery order and requiring Judge Seeley to recuse himself in the underlying state court proceedings.[9] These are precisely the kind of issues that should be addressed to the state courts and from which the state courts should be "free from interference by federal courts." *Younger*, 401 U.S. at 43.

## B.    Karen Guinn, Circuit Court Clerk

Guinn is the Circuit Court Clerk for Washington County, Tennessee. Although it is difficult to

---

[9]    It is doubtful this federal court would have the authority to order the recusal of a state judge. *See* Anti-Injunction Act, 28 U.S.C. § 2283.

discern the exact nature of plaintiff's claim against Guinn, it appears that he attempts to assert a § 1983 claim based on alleged *ex parte* communications between Guinn, and/or employees of her office, with counsel for the defendant in plaintiff's state court personal injury action. More specifically, plaintiff appears to claim that Guinn and/or employees of her office provided certain documents, apparently pleadings filed by the plaintiff in the state court action, to attorneys Jenkins and/or Miller before plaintiff could serve the pleadings on defendant's counsel by mail and without plaintiff's knowledge. Guinn claims that such conclusory allegations do not state a claim against her on which relief may be granted and that, in any event, she is entitled to *quasi-judicial* immunity. Guinn is correct.

To state a claim under § 1983, plaintiff must allege the deprivation of a federal right by a person acting under color of law. *Sperle v. Michigan Dep't. of Corrections*, 297 F.3d 483, 490 (6th Cir. 2002). Guinn correctly argues that plaintiff does not allege that he was deprived of a federal right. The allegation made by plaintiff–that Jenkins was provided a copy of a pleading filed by him before it could be served by mail–does not, even when construed most liberally in favor of plaintiff, even remotely implicate the deprivation of any federal right. Plaintiff identified no specific constitutional rule or statute which creates the right he asserts and makes only conclusory allegations about the constitutional provision[s] allegedly involved ("Plaintiff was being denied his First, Forth [sic], Fifth, Ninth and Fourteenth Amendment rights"). Most importantly, plaintiff does not show how Guinn's actions violated any of these constitutional provisions. Simply put, the communications between Guinn and/or her employees and Jenkins implicate no federal right. Secondly, the pleading filed by plaintiff was, from the moment of its filing in state court, a public record subject to view by the public, including Jenkins. *See* Tenn. Code Ann. § 10-7-403(2). That Jenkins could inspect and obtain a copy of the pleading from the

clerk's office before it was delivered to him by mail from plaintiff is of no consequence.[10]

Furthermore, since Guinn's actions were within the scope of her duties as Circuit Court Clerk, she is entitled to immunity in this case. In *Butz v. Economu*, 438 U.S. 478 (1978), the United States Supreme Court held that absolute immunity could be extended to non-judges engaged in "quasi-judicial" proceedings. 438 U.S. at 512-13. Under *Butz*, "the determination of whether an official is to be afforded absolute 'quasi-judicial' immunity for [her] official acts is accomplished through a functional analysis, *i.e.*, a comparison of the functions the official performs with typical judicial functions." *Wright v. McClain*, 626 F.Supp. 1073, 1074 (W.D. Tenn. 1986) (quoting *Butz*, 438 U.S. at 512-17). The central question in deciding whether absolute immunity extends to Guinn's duties as Circuit Court Clerk is whether her actions can be considered judicial in nature. Quasi-judicial immunity extends to "those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).

It can hardly be reasonably argued that the duties of the clerk of the circuit court are not so integral or intertwined with the judicial process as not to make the clerk an arm of the judicial officer, and plaintiff makes no attempt to show otherwise.[11] Even a cursory review of the general statutory duties of the court clerk make that conclusion readily apparent. *See* Tenn. Code Ann. §§ 18-1-105, 18-4-103. Of particular importance is the requirement that the court clerk "[k]eep all papers, books, dockets

---

[10]   Plaintiff makes the conclusory claim in his response to the motion that Jenkins received a copy of the pleading from an employee in Guinn's office, not from a personal inspection of the public record. Accepting the allegation as true, that makes no difference. The record was **available** to the public, including Jenkins.

[11]   The only real response plaintiff makes to Guinn's claim of immunity is that such claim "really is in an improper position."

and records," "allow parties to inspect the records free of charge," and provide a copy "to any person . . . of any paper or record in the clerk's office." Tenn. Code Ann. § 18-1-105(8) and (10). Thus, the conclusion that Guinn was acting within the scope of her duties, that her duties were integral to and intertwined with that of the judicial officer, and that she is entitled to immunity is inescapable.

In addition, the Sixth Circuit has applied quasi-judicial immunity to a court clerk when the acts complained of are within the clerk's jurisdiction; *Carlton v. Baird*, 72 F. App'x 367 (6th Cir. 2003) (*per curiam*) (citing *Johnson v. Turner*, 125 F.3d 324, 332 (6th Cir. 1997)); *Harris v. Suter,* 3 F. App'x 365 (6th Cir. 2001) (*per curiam*) (citing *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987); *Mwonyonyi v. Gierzl*, 895 F.2d 1414 (6th Cir. 1990) (Table); *Rodman v. Dalton*, 886 F.2d 1316 (6th Cir. 1989) (Table); *Jones v. Mossing*, 791 F.2d 933, (6th Cir. 1986) (Table), as have numerous district courts in the circuit. *Scott v. Little*, 2010 WL 3862897 (E.D. Tenn. 2010); *Flinn v. Corbitt*, 2008 WL 2388129 (E.D. Tenn. 2008); *Jonaitis v. Morrison*, 2008 WL 151252 (W.D. Mich. 2008); *Yarbrough v. Garrett*, 579 F.Supp.2d 856 (E.D. Mich. 2008); *White v. Wayne Cty. Ct. Clerks*, 2007 WL 4181566 (E.D. Mich. 2007); *Revis v. Meldrum*, 2006 WL 36888 (E.D. Tenn. 2006); *Gilleylen v. Sup. Ct. Clerk Davis*, 2005 WL 2899469 (W.D. Mich. 2005); *Moore v. Tennessee*, 2005 WL 1668365 (E.D. Tenn. 2005)

### C. Jenkins/Miller

Both Jenkins and Miller are private attorneys representing the defendant in plaintiff's state court personal injury action. Both argue that plaintiff's § 1983 action fails as a matter of law because neither is a state actor under 42 U.S.C. § 1983. The Court agrees.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under color of law, without due process of law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978);

*Smith v. Hilltop Basic Resources, Inc.*, 99 F. App'x 644, 2004 WL 1152170 (6th Cir. 2004); *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir. 1997); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991) *cert. denied*, 502 U.S. 1032 (1992). If either element is lacking, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). Plaintiff's claim here lacks the necessary allegation of state action under color of law.

As noted above, Jenkins and Miller are private attorneys retained by private parties to represent a client. The Supreme Court has set forth a two-pronged test for determining whether the action of private parties can be considered state action:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some State rule governing their interactions with the community surrounding them.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). In *Lugar*, a creditor sued a debtor and sought prejudgment attachment of property under Virginia law. The attachment, issued *ex parte*, was ultimately dismissed after a hearing and the debtor then sued the creditor under § 1983. *Id.* at 924. The Supreme Court found the first part of the test to have been met because the alleged due process deprivation was caused by the exercise of the state created right of attachment. *Id.* at 941.

Likewise, in *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991), the Supreme Court

found the first part of the two-part *Lugar* test to be met where the challenged conduct, *i.e.*, the use

peremptory challenges to exclude black persons from a jury, was specifically authorized by statute. *Id.*

at 620. In both *Lugar* and *Edmonson*, the Supreme Court also found the second part of the two-part test

to have been met because the overt, significant assistance of the court was required by the private party.

The Supreme Court in *Edmonson*, however, limited its holding to the use of peremptory challenges by

the private party and established the general rule which applies:

> . . . Here, as in most civil cases, the initial decision whether to sue at all,
> the selection of counsel, and any number of ensuing tactical choices in the
> course of discovery and trial may be without the requisite governmental
> character to be deemed state action. That cannot be said of the exercise
> of peremptory challenges, however; when government litigants participate
> in the selection of jurors, they serve an important function within the
> government and act with its substantial assistance. If peremptory
> challenges based on race were permitted, persons could be required by
> summons to be put at risk of open and public discrimination as a condition
> of their participation in the justice system. The injury to excluded jurors
> would be the direct result of governmental delegation and participation.

*Id.* at 627-28.

Applying these rules, the Sixth Circuit has held that attorneys engaged in private litigation do not

act under color of state law. *Smith*, 2004 WL 1152170 at **5 ("vast weight of authority [is] that private

attorneys . . . do not act under color of state law within the meaning of Section 1983") (citing *Barnard

v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983); *Bochetto v. LaBrum & Doak, LLP*, 1997 WL 560191

at * 5-*6 (E.D. Pa. 1997) (holding that under *Lugar* and *Edmondson*, an attorney who issued a subpoena,

opposed a motion for protective order, and obtained a court order requiring compliance with the

subpoena did not act under color of state law for the purposes of § 1983)); *see also Harmon v. Hamilton

Co. Ct. of Common Pleas*, 83 F. App'x 766 (6th Cir. 2003); *Otworth v. Valderploeg*, 61 F. App'x 163

(6th Cir.2003); *Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999); *Catz v. Chalker*, 142 F.3d 279 (6th Cir.

1991) (opinion amended on denial of re'hrg., 243 F.3d 234 (6th Cir. 2001)). Thus, Jenkins and Miller, acting as private attorneys representing private parties in civil litigation, are not state actors for the purpose of § 1983.

Plaintiff does make a somewhat novel argument that these private attorneys are state actors because they are licensed by the State of Tennessee and the state supreme court oversees the conduct of all attorneys. He further argues that all attorneys are employees of the state supreme court and "can be hired or fired at the Supreme Court choosing." Mere licensure and/or regulation by the state, however, does not create a sufficiently close nexus between the state and the private actor to mandate the private actor's classification as a state actor. *See Blum v. Yaretsky*, 457 U.S. 991 (1982) (private nursing home not state actor despite extensive regulation and 90% fees from state); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (private school that treats students with drug/alcohol problems not state actor despite operating under contract with the state and receiving 90% state funding;) *see also Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) (private mental hospital not state actor despite state regulation); *Greco v. Orange Memorial Hosp. Corp.*, 513 F.2d 873 (5th Cir. 1975) (no state action where private hospital operated on land leased from county). Plaintiff's argument that state licensure and regulation converts a private attorney from a private actor into a state actor is simply without merit. Were the Court to adopt the plaintiff's position, every professional licensed by the state or person or entity regulated by the state would be converted into a state actor for § 1983 purposes.

The plaintiff also attempts to allege a conspiracy among these attorneys, the presiding judge and the court clerk to violate his rights under § 1983.[12] The standard for proving a § 1983 conspiracy claim

---

[12] Jenkins, in his motion to dismiss, suggests that plaintiff may also be attempting to assert a conspiracy claim to violate civil rights under 42 U.S.C. § 1985(3). Such a claim would not require state action; it does, however, require some racial or other class-based motive behind the conspirator's actions.

was set forth by the Sixth Circuit by *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 943-44.  "It is well-settled that conspiracy claims must be pled to some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Furthermore, the Sixth Circuit has acknowledged that because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy."  *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000).

A claim of a conspiracy between private and state actors, if adequately alleged, generally suffices to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss.  *Revis*, 489 F.3d at 292 (citing *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004)).   Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents.  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  Plaintiff's complaint here fails to contain the required degree of specificity.  He simply alleges in conclusory fashion that his "Civil Rights have been and are being violated collectively and in concert," an allegation which is vague and unsupported by allegations of material facts.  Plaintiff does not plead facts to establish an agreement or single plan shared by the alleged co-

---

*Wolotsky v. Huhn*, 960 F.2d 1331, 1332 (6th Cir. 1992).  Plaintiff makes no such allegations here.  He does mention 42 U.S.C. § 1985 in his response to Jenkins's motion but  does not make allegations which could be construed as allegations of a conspiracy under 42 U.S.C. § 1985(3).

conspirators. He clearly has not adequately alleged a conspiracy between state actors and private actors.

### D. Mountain States

Plaintiff's allegations against Mountain States are contained in his amended complaint, [Doc. 20], a rambling, difficult to understand, five page pleading. At the beginning of the document is the following completely capitalized statement: "MOUNTAIN STATES HEALTH ALLIANCE & ATTORNEY RONALD W. JENKINS VIOLATED THE PLAINTIFF CONSTITUTIONAL RIGHTS BY WRONGFUL HANDLING OF PLAINTIFF PERSONAL/PRIVATE INFORMATION/PROPERTY HIS SOCIAL SECURITY NUMBER." He further alleges that his "Constitutional Rights have been and are being violated collective and in concert." The essence of plaintiff's complaint against Mountain States appears to be that it released plaintiff's social security number to "attorney Ronald W. Jenkins without the consent of the plaintiff." He further alleges that "[t]hese defendants (presumably Mountain States and Jenkins) have acted with negligence in distributing the plaintiff personal/Private information/property without the plaintiff's consent." Plaintiff seeks monetary damages in the amount of $1,000,000.00 for each of three separate "events" of violations of his constitutional rights by Mountain States.

Plaintiff alleges "three events of discharging the plaintiff's private, personal property," *i.e.* his social security number and sets forth his allegations in seven separately numbered paragraphs. As best this Court can tell from this confusing pleading, the following are the factual allegations made by the plaintiff: (1) Judge Seeley's order contained incorrect dates and "Johnson City Medical Center (Mountain States) should have questioned this dating and not have honored this improper court order;[13] (2) Jenkins

---

[13]     The basis for this claim is very difficult to discern. Plaintiff has made several allegations about dates in his filings. The first is the one referenced in footnote 6 above. The other involves the dates related to the proposed order for production of medical records. As noted above, Judge Seeley held a hearing on the discovery motions on June 6, 2010. It appears from the certificate of service that Jenkins mailed the proposed order to the plaintiff on July 1, 2010. Judge Seeley appears to have signed the order and it was entered by the clerk on July 7, 2010. Jenkins made his request for records pursuant to the order to Johnson City Medical

and Miller "acted wrongfully in gaining access to plaintiff social security number and not returning it to Johnson City Medical Center or to the plaintiff;[14] (3) plaintiff was not notified that Miller and Jenkins had gained access to his medical records until he received a copy of those records from Johnson City Medical Center; (4) the certificate of service on Judge Seeley's order contains a date of July 1, 2010, an obviously incorrect date since Judge Seeley did not sign the order until July 7, 2010; (5) Jenkins letter to Johnson City Medical Center requesting plaintiff's medical records is dated on July 16, 2010, and therefore could not have been sent with the order and the certificate; and (6) Jenkins and Miller failed to inform the plaintiff that they had acquired his social security number from his medical records, "a simple case and concealment of personal/private information from the plaintiff," and "indicates perjury, ex Parte communication and out right lying."

Mountain States has moved to dismiss and/or for summary judgment and has attached to its motion a copy of defendant Jenkins' letter of July 16, 2010, to Johnson City Medical Center requesting plaintiff's medical records related to any treatment on or after the first day of January, 2010,[15] and the order authorizing Jenkins to obtain plaintiff's medical records entered in the Circuit Court for Washington County, Tennessee on July 7, 2010. Reading plaintiff's amended complaint to allege a cause of action in violation of the Federal Privacy Act and the Health Insurance Portability and Accountability Act ("HIPAA"), Mountain States seeks dismissal as to both claims.

Center by letter dated July 16, 2010. There appears to be nothing improper about the dating in the order, certainly nothing which should have caused Mountain States to refuse to honor it.

[14] As support for this second allegation, plaintiff cites § 155.05 of the New York Penal Code which requires a person acquiring loss of property to return such property to the owner, a completely nonsensical citation.

[15] Although plaintiff alleges that defendants are seeking records "that are thirty plus years old," the order signed by Judge Seeley limits the time period to calendar year 2000 to the present. The request to Mountain States was for records for treatment after January 1, 2010.

Plaintiff has filed two identically styled pleadings in response to the Mountain States motion which shed some light on the true nature of his causes of action, [Doc. 43, 43-1]. In the first of those pleadings, [Doc. 43], plaintiff claims a conspiracy between Mountain States and Jenkins to violate the Privacy Act of 1974. He asserts that the Privacy Act "clear state that the social security number is not to be strewing about without the plaintiff written consent even with a false or improper court order." He further argues that Mountain States cannot seek judgment as a matter of law because he is guaranteed a right to a trial by jury by the Seventh Amendment of the Constitution.[16] In the second pleading, [Doc.43-1], the plaintiff simply reasserts that Mountain States provided his social security number to Jenkins, Mountain States knew it was required to expunge this information from the records before turning them over to Jenkins, and that Mountain States knowingly violated plaintiff's rights to privacy and his "Forth [sic] Amendment right to unlawful searches and seizures, his Fifth Amendment [right] to due process and the plaintiff First Amendment right to refuse to give out personal information."

It thus appears to this Court that plaintiff is attempting to assert two causes of action through his amended complaint.[17] First, it appears that he clearly attempts to assert a claim of conspiracy between Mountain States and Jenkins to violate his rights under the Privacy Act of 1974. Secondly, it appears that plaintiff seeks to assert a claim pursuant to § 1983 for a civil conspiracy to violate his constitutional rights. The Court will discuss each of these in turn.

---

[16] Plaintiff's rigid reading of the Seventh Amendment right to a jury trial has been repeatedly rejected by the United States Supreme Court. "[M]any procedural devises developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 (1979) (citing, among other cases, *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319-21 (1902) (summary judgment does not violate the Seventh Amendment)).

[17] Even though Miller addresses the possibility that plaintiff asserts a violation of HIPAA, the complaint does not even arguably allege such a violation and the Court will not address the matter further.

### 1.    The Privacy Act

Plaintiff specifically invokes the protection of the Privacy Act of 1974 in arguing that disclosure of his social security number through Mountain States' response to the court's order to produce medical records violated his federal rights.  His Privacy Act claim, however, fails for a very simple reason.  The Sixth Circuit has held that the Privacy Act applies only to the actions of agencies that fall under the control of the federal government and applies exclusively to federal agencies.  *Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005).  Neither Mountain States nor Jenkins are federal agencies and Mountain States's acts in complying with Judge Seeley's order requiring the production of certain medical records is not the act of a federal agency and the Privacy Act has no application.  Since the plaintiff cannot state a cause of action under the Privacy Act against a private actor, the claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

### 2.    Conspiracy to Violate Constitutional Rights

As set forth above, to state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who is acting under color of state law.  *Flagg Bros., Inc.*, 436 U.S.at 155-57.  Although the plaintiff references § 1983 in his original complaint, he does not specifically reference it in his amended complaint or his responses to the Mountain States motion.  It is clear, however, from an overall consideration of his many pleadings in this case that he is seeking to redress violations of what he perceives as his civil rights through this litigation,  and the Court will treat the claim as one for civil conspiracy under § 1983.

The standard for proving a § 1983 civil conspiracy claim has been set forth in § II. C. above.  Plaintiff's civil conspiracy claim fails for two very obvious reasons.  First of all, he makes no allegation of state action.  Both Mountain States and Jenkins are private actors, not state actors, and

neither was acting under color of state law.  Secondly, plaintiff's complaint is deficient in that, while it references in a conclusory fashion certain constitutional provisions, it contains nothing more than a conclusory allegation that defendants acted in concert or that they had a single plan in doing so.  At best, plaintiff simply alleges that Jenkins obtained from Judge Seeley a court order for the production of plaintiff's medical records related to treatment after January 1, 2010, and that Mountain States, in accordance with the order, provided certain medical records.  Mountain States's Rule 12(b)(6) motion will be GRANTED, therefore, as to the conspiracy claim.

**IV.     Conclusion**

For the reasons set forth herein, the motions of all defendants to dismiss, [Docs. 6, 7, 13, 26, 40], are GRANTED and plaintiff's claims against all defendants are DISMISSED WITH PREJUDICE.

A separate judgment will enter.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
